UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  09/12/2024

---

NAOMI FAY,

                            Plaintiff,

        -against-

CITY OF NEWBURGH, et. al,

                            Defendants.

No. 21 Civ. 3140 (NSR)

**OPINION & ORDER**

---

NELSON S. ROMÁN, United States District Judge

Naomi Fay ("Plaintiff") commenced this action against the City of Newburgh ("the City") and Joseph P. Donat ("Donat", and, together with the City, "Defendants"), asserting claims for, *inter alia*, sexual harassment, wrongful termination, retaliation, and violations of the Fourteenth Amendment.[1] (Complaint ("Compl."), ECF No. 6.) Presently before the Court is Defendants' motion for summary judgment (the "Motion") on all of Plaintiff's claims. (ECF No. 72.) For the following reasons, the Court GRANTS the Motion in its entirety.

**BACKGROUND**

**I.    Factual Background**

The parties have submitted briefs, statements of material facts pursuant to Local Civil Rule 56.1, and the record and exhibits from discovery in the instant proceeding, which reflect the following factual background. The following facts are undisputed unless otherwise noted.

Plaintiff was first employed by the City in 2010 as a senior typist in the City's Engineering Department. (Defendants' Statement of Material Facts Pursuant to Local Rule 56.1 ("Defs.' 56.1") ¶ 3.) In 2014, Plaintiff was transferred from the Engineering Department to the

---

[1] Plaintiff originally asserted a *Monell* claim as part of her Complaint. (*See* Compl. ¶¶ 84-88.) During the briefing of Defendant's Motion, Plaintiff withdrew this claim. (*See* Plaintiff's Opposition ("Pltf.'s Opp."), ECF No. 76 at 22.)

City's Executive Office/City Manager's Office. (*Id.* ¶ 4.) Upon her transfer to the City's Executive Office, Plaintiff's title was Executive Assistant to the City Manager. (*Id.* ¶ 7.) On December 14, 20218, Defendant Donat became the Interim City Manager, while Plaintiff retained her position as Executive Assistant to the City Manager. (*Id.* ¶¶ 9-10.) From on or about December 2018 through March 2019, Plaintiff and Donat communicated via email and text messages, for both work and non-work-related items. (*Id.* ¶¶ 24-25.)

For example, on Tuesday, February 12, 2019, the City was subjected to poor weather conditions. (*Id.* ¶ 26.) That same day, Plaintiff and Donat exchanged a series of text messages, including Plaintiff stating, "Joe, I going to head out before the sleet hits at noon. I can log in from home if you need anything. Call or text me if you need anything. Stay safe." (*Id.* ¶¶ 27-28.) Donat responded, "Will do. Thanks," followed by "Need a ride?" (*Id.* ¶ 29.) Plaintiff declined but expressed her gratitude at his offer. (*Id.* ¶ 30.) Donat followed up with "No prob. Happy to do it. Let me know. Please!" followed by a winky-face emoji. (*Id.* ¶ 31.) Plaintiff responded, "Made it home:)." (*Id.* ¶ 32.) Donat then said "Let me know if you need anything. More than happy to bring you a bite to eat or anything else." (*Id.* ¶ 33.) Plaintiff responded "Ty." (*Id.* ¶ 34.)

Another time, Donat asked Plaintiff "What would you say one of the betters spas in the area is? Im trying to get a massage cause my back is real tight and they are all booked, of course." (*Id.* ¶ 40.) Plaintiff responded, "Buttermilk space in Milton is nice and close too. Or sacred Space in Beacon right on main st. Good to do self care," to which Donat replied, "Ok, will do. Thanks." (*Id.* ¶ 41.) In another instance, on February 21, 2019, Donat texted Plaintiff, "If we get out early, maybe we can spend some time out tonight. Im getting more and more tired as time goes on though." (*Id.* ¶ 49.) Plaintiff responded, "I hear yay." (*Id.* ¶ 50.) Donat then realized he had left his keys and texted Plaintiff, "I'm going crazy. But since all i got in life is my j-o-b and

no one to go home too... I got all night." (*Id.* ¶ 52.) Plaintiff responded, with a crying emoji, "You and me, haha!" (*Id.* ¶ 53.)

On March 18, 2019, Donat and Plaintiff exchanged emails regarding a Plumbing Inspector Press Release that Donat had edited. After Plaintiff sent the edited release to City Fire Chief, Donat advised her that the email should have instead been directed to the City Fire Chief's assistants rather than the Chief himself. (*Id.* ¶ 70.) The same day, Donat restricted Plaintiff's access to his emails, but still wanted her to schedule meetings for him. (*Id.* ¶ 71.) On March 21, 2019, Donat sent an email to Plaintiff regarding a release she had authored, and asked that "[w]hen you return, we should talk about this. The attached release was not great, and the one you did prior also contained a number of typos and errors. I understand that you have a lot on your plate, however I would like for you to be sure that anything you send me is in more of a finalized format." (*Id.* ¶ 76.) Donat also subsequently advised Plaintiff that she no longer need to attend Human Resources department meetings. (*Id.* ¶ 80.) He also asked her to schedule meetings only with his approval. (*Id.* ¶ 84.)

On April 1, 2019, Plaintiff sent an email to Donat that she was not feeling well and would be taking the rest of the day off. (*Id.* ¶ 86.) Donat replied later that day that "[t]here have been a handful of mistakes made over the last few months related to scheduling meetings…Mistakes like this cannot continue to happen." (*Id.* ¶ 87.) On April 6, 2019, Plaintiff emailed Michelle Kelson, the City's lead legal officer, with copies to Donat and her attorney, advising them that she "left work on April 1, 2019 and have been out since due to the fact that I do not feel safe in my work environment. It has been hostile, retaliatory and I am very uncomfortable." (*Id.* ¶ 89.) In the email, Plaintiff referenced the text messages between her and Donat, as well as his recent "extremely critical and aggressive emails" to her. (*Id.*) Plaintiff requested "an immediate

3

investigation in order for this to be addressed to allow me to report back to work in a safe and healthy environment." (*Id*.)

Upon receipt of Plaintiff's complaint, Kelson reviewed it and referred it to outside counsel, indicating that it appeared to be something that should be investigated and, if counsel agreed, they should refer to an independent investigator to conduct an investigation. (*Id*. ¶ 92.) Plaintiff was told that an investigation had commenced and she "will be permitted to remain absent from work while the City proceeds with an investigation." (*Id*. ¶ 94.) The investigation ultimately "uncovered no substantive evidence that Mr. Donat has behaved inappropriately toward [Plaintiff]." (*Id*. ¶ 101.) After her review of the investigative report, Kelson told Donat that he should limit the text messages that he sends for work purposes only. (*Id*. ¶ 102.)

On May 23, 2019, Kelson asked Plaintiff to return to work on or before June 3, 2019. (*Id*. ¶ 105.) Plaintiff asked in response, "what steps and provisions have been taken to make sure that my concerns as addressed in my complaint have been handled." (*Id*. ¶ 106.) Kelson said that her concerns had been investigated and deemed unfounded and that "[i]f anything should occur upon your return to work that you perceive to be retaliatory or in violation of the law or City policy, you should immediately contact me with the details so that they can be investigated." (*Id*. ¶ 109.) Plaintiff, however, failed to return to work on June 3, 2019, and was therefore again directed to return to work on or before June 7, 2019. (*Id*. ¶ 111.) Plaintiff did not return and, subsequently, on June 14, 2019, Plaintiff's employment with the City was terminated. (*Id*. ¶¶ 112-13.)

## II.     **Procedural History**

Plaintiff filed this action on April 12, 2021. (Compl., ECF No. 1.) Defendants filed the instant Motion on November 8, 2023, as well as a memorandum of law ("Defs.' MoL.", ECF No. 75) and a reply ("Defs.' Reply", ECF No. 81) in support thereof. Plaintiff filed a memorandum

of law in opposition to the Motion. (Pltf.'s Opp., ECF No. 76.)

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 56(c), summary judgment must be granted if "there is no genuine issue of material fact and ... the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 n. 4 (1986). "[G]enuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, [while] materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 5 (2d Cir. 1999) (internal quotations and citations omitted). In order to prove that a genuine issue of material fact exists, a plaintiff "may not rest upon the mere allegations or denials of the pleading[s]," but must by affidavit or otherwise "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "Conclusory statements, conjecture or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

Courts must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. *See Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). The moving party bears the initial burden of demonstrating an absence of genuine issues of material fact. *See Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). If the initial burden is met, the non-moving party "must produce specific facts indicating that a genuine issue of fact exists. If the evidence [presented by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (internal quotations and citations omitted) (alteration in original).

In cases that involve claims of discrimination, courts must use "an extra measure of caution" in determining whether to grant summary judgment "because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (citation omitted). However, "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted) (alterations omitted). "Thus, even in the context of a discrimination case, 'a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment,'" *Fitchett v. City of New York*, No. 18 CIV. 8144 (PAE), 2021 WL 964972, at *8 (S.D.N.Y. Mar. 15, 2021) (citation omitted), and courts may grant summary judgment against "discrimination claims in cases lacking genuine issues of material fact," *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001) (citation omitted).

## DISCUSSION

### I.    Title VII Hostile Work Environment

Plaintiff alleges discrimination based upon her gender in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et. seq*. Title VII prohibits employment discrimination based on race, color, sex and national origin. 42 U.S.C. § 2000e–2(a)(1). Title VII covers various forms of discrimination, including the creation of a "workplace [that] is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," also known as a hostile work environment. *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (citations and quotations omitted). To prevail on a hostile work environment claim under Title VII, a plaintiff must demonstrate that the misconduct

in her workplace is "so objectively offensive as to alter the 'conditions' of [her] employment." *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).

Plaintiff claims that Defendant Donat's sexual harassment of her created a hostile working environment.[2] (Compl. ¶¶ 45-46.) "In order to withstand summary judgment on a hostile environment claim, Plaintiff must establish that (1) the harassment was so severe as to alter the terms and conditions of her employment, and (2) there is a basis for imputing the harassing conduct to the employer." *Breeding v. Cendant Corp.,* No. 01 CIV. 11563(GEL), 2003 WL 1907971, at *4 (S.D.N.Y. Apr. 17, 2003). "An employer who has notice that an employee is being sexually harassed has a duty to take reasonable steps to eliminate the harassment." *Id.* (citing *Distasio v. Perkin Elmer Corp.,* 157 F.3d 55, 62 (2d Cir. 1998)). An employer may avoid vicarious liability, however, by establishing that (1) it took reasonable steps to remedy the problem, and (2) the harassed employee unreasonably failed to avail herself of the corrective measures provided by the employer – known as the *Faragher*/*Ellerth* affirmative defense. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Ellerth,* 524 U.S. at 765.

---

[2] Plaintiff labels her first cause of action "Hostile Work Environment," and, as part of her allegations in support of that claim, accuses Defendant City of "creating, and maintaining a toxic and hostile work environment laced with…acts of sexual harassment." (Compl. ¶ 46.) Plaintiff's second cause of action, entitled "Sexual Harassment," however, largely duplicates the allegations included as part of her first cause of action, by accusing the City and Defendant Donat of creating a hostile work environment. (*Id.* ¶¶ 53-54.) The Court thus construes both the first and second causes of actions as stating an identical Title VII claim for hostile work environment against the City and addresses them jointly in Section I.

To the extent that Plaintiff attempts to bring, as part of her second cause of action, a Title VII claim for hostile work environment against Defendant Donat, it is well-settled that individual liability, even for those with supervisory responsibility, does not lie under Title VII. *See Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003); *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000); *see also Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313 (2d Cir. 1995) ("individual Defendants with supervisory control over the Plaintiff may not be held personally liable under Title VII."), *abrogated on other grounds by Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742 (1998). Accordingly, to the extent that Plaintiff asserts a Title VII claim against Donat, the Court affords Defendants judgment as a matter of law on such a claim.

Even assuming, *arguendo*, that Plaintiff could establish the existence of a hostile work environment, Defendant City is entitled to summary judgment based on the *Faragher/Ellerth* affirmative defense. Regarding the first element of the defense, an employer may demonstrate the exercise of reasonable care by pointing to the existence of an antiharassment policy during the period of the plaintiff's employment. *See Mack v. Otis Elevator Co.,* 326 F.3d 116, 128 (2d Cir. 2003); *Caridad v. Metro–N. Commuter R.R.,* 191 F.3d 283, 295 (2d Cir. 1999). Here, the parties do not dispute that, at all times during Plaintiff's term of employment, the City had an antiharassment policy (the "Policy") in effect that prohibited harassment on the basis of sex. (*See* ECF No. 73-27 at 9, §34-28.F.5.) The Policy specifically provided a mechanism for complaints against City Managers, such as Defendant Donat, and encouraged prompt reporting "before the conduct becomes severe or pervasive." (*See id.* at 3, §34-22.A.(1); *see also id.* at 9, §34-28.F.5.) In accordance with the Policy, after Plaintiff shared her concerns with the City, the City promptly commenced an independent investigation, and allowed Plaintiff to take leave of absence from work. (*See, e.g.*, Compl. ¶ 35; ECF No. 73-26.)

Plaintiff counters that the City's investigation failed to conclude that harassment was occurring and therefore it put no safeguards in place to remedy her hostile work environment. (Pltf.'s Opp. at 6.) But Plaintiff's argument "misapprehends the first element of the defense, which looks to the adequacy and efficacy of the employer's procedures in addressing harassment, not simply to the specific discipline imposed as an end result of those procedures." *Miller v. New York State Police*, No. 20-3976, 2022 WL 1133010, at *3 (2d Cir. Apr. 18, 2022). Plaintiff does not dispute that the City maintained a policy for dealing with the discriminatory behavior in question. (*See* Plaintiff's Deposition, ECF No. 73-4 at 68-69.) Nor does she dispute the reasonableness of the Policy or its complaint procedures. *See Miller,* 2022 WL 1133010, at *3.

Nor still has she presented evidence that the Policy was ineffective—i.e. that the City had previously ignored complaints of sexual harassment or failed to take corrective actions in appropriate cases. Rather, the undisputed facts demonstrate that, in accordance with the Policy, the City conducted an independent investigation in response to Plaintiff's internal complaint and adopted the conclusion of its external investigator that Plaintiff's claims of harassment were unsubstantiated. The Court therefore finds that there is no evidence from which a reasonable jury could conclude that the City failed to satisfy the first element of the *Faragher/Ellerth* affirmative defense.

Regarding the second element of the defense, "proof that an employee has unreasonably failed to use the employer's complaint procedure normally suffices to satisfy the employer's burden." *See Ferraro v. Kellwood Co,* 440 F.3d 96, 102 (2d Cir. 2006). Defendant Donat's alleged harassment of Plaintiff began in February 2019, but Plaintiff waited until April 2019 to make an internal complaint to the City about said harassment. (*See* ECF 73-4 at 68-69, 76, 87, 99-100.) To defeat the City's affirmative defense, it is not enough, as Plaintiff contends, that "she utilized the City of Newburgh's complaint procedure," Pltf.'s Opp. at 7, but that she did so at time when the City could have acted to prevent further harassment. Despite being aware of the Policy, Plaintiff waited months to put the City on notice of her concerns, simply because "she didn't know the details…[and] didn't brief [her]self before that of what that [P]olicy would say, and how you were supposed to act accordingly." (ECF No. 73-4 at 68-69.) This fact, however, does not excuse her failure to avail herself of the Policy while the alleged harassment was on-going.

Furthermore, even assuming that Plaintiff's non-responses to Donat's text messages constituted an objection to the alleged harassment, "informal complaints to [her] supervisor—

*and alleged harasser*—are not enough for [Plaintiff] to show (as [s]he must to defeat the affirmative defense) that [s]he took advantage of the [City's] preventive or corrective opportunities." *Miller*, 2022 WL 1133010, at *3 (emphasis in original). "In some instances, it may be unreasonable for a victim of harassment to complain only to the harasser because, as a realistic and practical matter, there are other channels that are adequately indicated and are accessible and open." *Gorzynski v. JetBlue Airways Corp*., 596 F.3d 93, 105 (2d Cir. 2010). The clear channel for raising Plaintiff's concerns was through the Policy, and she unreasonably failed to do so.

In sum, Plaintiff has not presented any evidence or testimony from which a reasonable jury could conclude that her failure to inform the City of her harassment while it was on-going was reasonable. As a result, the City is entitled as a matter of law to judgment on her claims of hostile work environment. *See Ferraro*, 440 F.3d at 103; *see also Breeding*, 2003 WL 1907971, at *6.

## II.  <u>Title VII Wrongful Termination</u>

Title VII claims for wrongful termination are analyzed under the familiar *McDonnell Douglas Corp*. burden-shifting framework. *Maines v. Last Chance Funding, Inc.,* No. 217CV05453ADSARL, 2018 WL 4558408, at *15 (E.D.N.Y. Sept. 21, 2018), *amended*, No. 217CV05453ADSARL, 2018 WL 4610898 (E.D.N.Y. Sept. 25, 2018). Under this framework, to make a *prima facie* case of discrimination, a plaintiff must show: "(i) membership within a protected group; (ii) satisfactory performance; (iii) an adverse employment action; and (iv) circumstances surrounding the action that give rise to an inference of unlawful discrimination." *Collins v. N.Y.C. Transit Auth.,* 305 F.3d 113, 118 (2d Cir. 2002) (citations omitted). Once a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a

legitimate, non-discriminatory reason for its actions. *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). At that stage, the defendant's burden "is one of production, not persuasion; it can involve no credibility assessment." *Herrnson v. Hoffman*, No. 19-CV-7110 (JPO), 2023 WL 2647603, at *4 (S.D.N.Y. Mar. 27, 2023) (quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000)). "Any legitimate, non-discriminatory reason will rebut the presumption triggered by the prima facie case. The defendant need not persuade the court it was motivated by the proffered reasons." *Cai v. Wyeth Pharms., Inc.*, No. 09 Civ. 5333, 2012 WL 933668, at *9 (S.D.N.Y. Mar. 19, 2012). Finally, the burden shifts back to the plaintiff to prove that discrimination was the true reason behind the defendant's actions. *Id.*

Here, even if Plaintiff established a *prima facie* case of discrimination, her wrongful termination claim would still fail because Defendant City has produced a legitimate, non-discriminatory reason for its termination decision, and Plaintiff has failed to show that reason was pretext for discrimination. Namely, the City has produced evidence that it terminated Plaintiff's employment because she failed to report to work after the conclusion of the independent investigation into her complaint of sexual harassment. It is undisputed that, on May 23, 2019, the City requested that Plaintiff return to work on or before June 3, 2019. (Defs.' 56.1 ¶ 104; ECF No. 73-6 at 45.) Plaintiff nonetheless did not return to work as directed. (*Id.* ¶ 112.) When Plaintiff failed to report to work, the City terminated her employment. (*Id.*) In their termination letter, the City clearly stated that Plaintiff was terminated "[d]ue to [her] failure to return to work on June 3, 2019 as directed." (ECF No. 73-37.) The City has therefore satisfied its burden of producing a legitimate, non-discriminatory reason for its action. *See, e.g.*, *Herrnson*, 2023 WL 2647603, at *4 (finding that the plaintiff's "failure to report for work became a legitimate, non-discriminatory reason to terminate" his employment); *Bourara v. New York*

11

*Hotel Trades Council & Hotel Ass'n of New York City, Inc. Emp. Benefit Funds*, No. 17 Civ.
7895, 2020 WL 5209779, at \*10 (S.D.N.Y. Sept. 1, 2020), *aff'd*, No. 20-3092, 2021 WL
4851384 (2d Cir. Oct. 19, 2021) (plaintiff terminated for legitimate reason where his failure to
report to work violated stated company policy).

Because the City has met its burden, Plaintiff must show "sufficient evidence to support a
rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were
false, and that more likely than not discrimination was the real reason for the employment
action." *Weinstock*, 224 F.3d at 42 (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708,
714 (2d Cir. 1996) (internal alterations adopted). At this stage, "[P]laintiff has the ultimate
burden of persuasion to demonstrate that the challenged employment decision was the result of
intentional discrimination." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995). "The
burden of establishing pretext is higher than the burden required to establish a *prima facie* case."
*Crowley v. Billboard Mag.*, 576 F. Supp. 3d 132, 147 (S.D.N.Y. 2021). Plaintiff can prove that
the City's reasons for terminating her are a pretext for discrimination by showing "the reason
was false and that discrimination was the real reason." *Gallo v. Prudential Residential Servs.*,
*Ltd. Partnership*, 22 F.3d 1219, 1225 (2d Cir. 1994). She can also establish that she was a victim
of intentional discrimination "by showing that the [City's] proffered explanation is unworthy of
credence," *Reeves*, 530 U.S. at 147, "by demonstrating weaknesses, implausibilities,
inconsistencies, or contradictions in the [City's] proffered legitimate, [nondiscriminatory]
reasons for its action," *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013).

Here, Plaintiff argues that the City's justification for terminating her after she failed to
report to work is pretextual because the City "took no steps to…speak to Plaintiff's safety

concerns" regarding her work environment.[3] (*See* Pltf.'s Opp. at 18-19.) Plaintiff's contention is contradicted by the undisputed facts on the record. First, Plaintiff requested an investigation into Defendant Donat's alleged misconduct and the City promptly did so by retaining an independent investigator. Next, following the conclusion of the independent investigation, the City advised Donat moving forward to limit his text messages to subordinates to work-related communications only and advised Plaintiff to "immediately contact" the City "[i]f anything should occur upon [her] return to work that [she] perceive[s] to be retaliatory or in violation of the law or City policy." (Defs.' 56.1 ¶¶ 101; 108.) Plaintiff decries the lack of "safeguards" put in place by the City "to address her articulated safety concerns," but fails to put forth any evidence that she requested any safeguards from the City. (*See* Pltf.'s Opp. at 17.) For example, Plaintiff never requested a new supervisor or an office further away from Defendant Donat. (Defs.' 56.1 ¶ 106.) Nor has Plaintiff put forth any evidence showing that the termination decision was motivated, even in part, by animus toward her sexual orientation. *See e.g.*, *Philpott v. State Univ. of N.Y.*, 805 F. App'x 32, 34 (2d Cir. 2020) (affirming summary judgment for the employer because the plaintiff "failed to offer any other evidence rebutting the proffered reasons or suggesting that [the employer] was, in fact motivated by [sexual orientation] discrimination"); *Mercado v. Mount Sinai Beth Israel*, No. 1:21-CV-10467 (JLR), 2023 WL 5975322, at *11–12

---

[3] In addition to her wrongful termination claim, Plaintiff alternatively argues in her opposition papers that she "suffered an adverse employment action in the form of an alleged forced resignation or constructive termination." (Pltf.'s Opp. at 17.) To the extent Plaintiff is attempting to raise a novel claim for constructive discharge, the Court does not permit her to amend her Complaint in this manner. "A party is not entitled to amend his complaint on summary judgment." *Lewis v. Lee*, 737 F. App'x 24, 29 (2d Cir. 2018); *see also Lyman v. CSX Transp., Inc.*, 364 F. App'x 699, 701-702 (2d Cir. 2010) (rejecting a claim raised for the first time in opposition to a summary judgment motion); *Southwick Clothing LLC v. GFT (USA) Corp.*, No. 99 Civ. 10452 (GBD), 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004) ("A complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers") (citation omitted). The Complaint contains no reference to a Title VII discrimination claim based on constructive discharge—only wrongful termination. (*See* Compl. ¶¶ 57-62.) In light of this omission, the Court will not now consider Plaintiff's novel constructive discharge claim.

(S.D.N.Y. Sept. 14, 2023). Accordingly, Plaintiff has failed to rebut the evidence that Defendant City terminated her because of her unjustified failure to return to work.

Because Plaintiff has failed to rebut Defendant City's justification for her termination, the City is entitled to summary judgment on Plaintiff's wrongful termination claim under Title VII. *See, e.g.*, *Vincent v. N.Y.C. Transit Auth.*, No. 17-cv-00068 (RRM) (RML), 2021 WL 1210368, at *9 (E.D.N.Y. Mar. 30, 2021) (granting summary judgment to the employer because the evidence showed that the plaintiff was "terminated for abandoning her job," and the plaintiff failed to presented "evidence to the contrary"); *Crowley*, 576 F. Supp. 3d at 147 (granting summary judgment to the defendants because the plaintiff failed to produce evidence sufficient to support sexual orientation-based discrimination claims); *Cargian v. Breitling USA, Inc.*, No. 15 CIV. 1084 (GBD), 2021 WL 4780327, at *11 (S.D.N.Y. Sept. 13, 2021) (granting defendant summary judgment because "[p]laintiff's speculation that he suffered sexual orientation discrimination, absent any supporting facts, is insufficient to allow a reasonable juror to conclude that [the d]efendant's true reason for [p]laintiff's adverse employment action is discrimination").

## III.  **Retaliation**

Plaintiff asserts that she was retaliated against because she rebuffed Defendant Donat's purported advances and raised her voice about her hostile and toxic work environment. (Compl. ¶ 64.) Title VII prohibits an employer from retaliating against an employee "because he has opposed any practice made an unlawful employment practice…or because he has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). Unlike Title VII's substantive anti-discrimination provision, which "seeks to prevent injury to individuals based on who they are, i.e., their status[,][t]he anti-retaliation provision seeks to prevent harm to individuals based on

what they do, i.e., their conduct." *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 63 (2006). Thus, "[e]ven if an employee is not the victim of prohibited discrimination, Title VII protects [the employee] against retaliation for protesting against such discrimination," *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 285 (2d Cir. 1998), because "[u]nlike the harassment claim, [plaintiff's] discriminatory retaliation claim may succeed on a theory that the defendants terminated him for reporting discrimination against others, because the act of reporting is statutorily protected," *Smith v. AVSC Int'l, Inc.,* 148 F. Supp. 2d 302, 311 (S.D.N.Y. 2001). To establish a prima facie case of retaliation, a plaintiff must demonstrate that "(1) she engaged in protected activity, (2) the defendant was aware of that activity, (3) she was subjected to a retaliatory action, or a series of retaliatory actions, that were materially adverse, and (4) there was a causal connection between the protected activity and the materially adverse action or actions." *Carr v. New York City Transit Auth.,* 76 F.4th 172, 180 (2d Cir. 2023). A "'materially adverse' action is one that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Burlington Northern*, 548 U.S. at 68).

Plaintiff claims that Defendant Donat "began to retaliate against" her in March 2019 after she "rebuffed his advances." (Compl. ¶¶ 31; 34.) In particular, she contends that she "experienced a clear change in her treatment, duties and relationship with Defendant Donat" (Pltf.'s Opp. at 22) when he "became aggressively critical regarding her work performance" (Compl. ¶ 34). But, as Plaintiff concedes, the City was not aware of this alleged retaliation and harassment until April 6, 2019, when Plaintiff filed her internal complaint. (*See* ECF No. 73-4 at 76:8-10.)  In other words, the retaliatory action (Defendant Donat's criticisms and alterations of her job duties) precedes Plaintiff's protected activity (the filing an internal complaint). This fact is fatal to Plaintiff's retaliation claim because "[b]y definition, [Donat's retaliatory] actions could

not have been caused by protected activity that came later." *Johnson v. City of New York*, No. 23-CV-5378 (JMF), 2024 WL 3520474, at *6 (S.D.N.Y. July 24, 2024); *see also Petyan v. N.Y.C. Law Dep't*, No. 14-CV-1434 (GBD) (JLC), 2015 WL 1855961, at *13 (S.D.N.Y. Apr. 23, 2015) ("To constitute retaliation, the alleged protected activity must predate evidence of the alleged retaliatory animus.") (cleaned up), *report and recommendation adopted by* 2015 WL 4104841 (S.D.N.Y. July 2, 2015). For example, in *Slattery v. Swiss Reinsurance America Corp.*, the "crucial issue" with respect to the plaintiff's retaliation claims was, like here, whether there existed "a causal nexus between his complaints" and the defendant's "adverse employment actions." 248 F.3d 87, 95 (2d Cir. 2001), *as amended* (June 6, 2001). The employer in *Slattery* began diminishing the plaintiff's job responsibilities five months before the plaintiff made his discrimination complaint, and the employer subsequently terminated the plaintiff after he made his protected complaint. *Id.* at 90, 95. The Second Circuit held that the temporal proximity of the protected activity and eventual termination could not support a causal nexus there because, like here, "the gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity." *Id.* at 95. The court explained that "the adverse employment actions were both part, and the ultimate product, of 'an extensive period of progressive discipline' which began when [the defendant] diminished [the plaintiff]'s job responsibilities a full *five months prior* to his filing of the EEOC charges." *Id.* (emphasis in original). It therefore concluded that the plaintiff's retaliation claims, brought under federal and state law, lacked the requisite casual nexus and granted the employer summary judgment. *Id.* The Second Circuit's holding in *Slattery* applies equally here, where Plaintiff alleges a period of negative actions weeks before Plaintiff's first protected activity.

In sum, Plaintiff "may not base her claim of retaliation upon [Donat's] complained-of-acts that predated her speaking out," *Bernheim v. Litt*, 79 F.3d 318, 325 (2d Cir. 1996), because conduct "that preceded protected activity…could not have been in retaliation for acts not yet taken," *Gregory v. Daly*, 243 F.3d 687, 701 (2d Cir. 2001). Furthermore, after Plaintiff filed her internal complaint, the only materially adverse employment action she faced was termination, but, as explained in Section II, *supra*, her termination was based on a legitimate, non-discriminatory reason. Accordingly, the Court grants Defendant City summary judgment as to Plaintiff's Title VII retaliation claim.

## IV.    Equal Protection Clause

Plaintiff additionally brings a Section 1983 claim against Defendant Donat, alleging a violation of her rights under the Fourteenth Amendment. (Compl. ¶ 75.) The Fourteenth Amendment's Equal Protection Clause "protects…employees from sex-based workplace discrimination, including hostile work environments and disparate treatment." *Raspardo v. Carlone,* 770 F.3d 97,114 (2d Cir. 2014); *see also Perry v. Slensby*, No. 16-CV-08947 (NSR), 2018 WL 1136922, at *4 (S.D.N.Y. Feb. 28, 2018) ("[s]exual harassment that rises to the level of gender discrimination is actionable under § 1983 as violative of the Fourteenth Amendment right to equal protection") (quoting *Pedrosa v. City of New York,* 2014 WL 99997, at *5 (S.D.N.Y. Jan. 9, 2014)). Section 1983 equal protection claims are governed by the same standards as Title VII claims, *Andersen v. Rochester City Sch. Dist.,* 481 F. App'x 628, 629 n.1 (2d Cir. 2012), a fact which Plaintiff concedes, *see* Pltf.'s Opp. at 20.

Plaintiff's equal protection claim is premised on the same grounds as her Title VII sexual harassment, wrongful termination and retaliation claims, and thus rises and falls with her Title VII claims. (*See* Compl. ¶¶ 77, 79-80.) Accordingly, for the reasons articulated in Section I, II

and III, *supra*, Plaintiff's equal protection claim fails. *See Hoit v. Cap. Dist. Transportation Auth.,* 805 F. App'x 41, 45 (2d Cir. 2020) (affirming dismissal of a plaintiff's Section 1983 sexual harassment claim for the same reasons as plaintiff's Title VII claims); *see also White v. Dep't of Corr. Servs.,* 814 F. Supp. 2d 374, 392 (S.D.N.Y. 2011) ("summary judgment has been denied with respect to the plaintiff's Title VII claim…and thus summary judgment must also be denied with respect to the plaintiff's § 1983 claim arising from this incident"). The Court grants Defendants summary judgment on Plaintiff's equal protection claim.

## V.    **State Law Claims**

Plaintiff additionally brings claims for hostile work environment, *quid pro quo* sexual harassment, and retaliation in violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 *et seq*. (Compl. ¶¶ 69, 71.)

Federal courts have supplemental jurisdiction over non-federal law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A district court may, at its discretion "decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court has instructed that, in deciding whether to exercise supplemental jurisdiction, a district court should balance the traditional "values of judicial economy, convenience, fairness, and comity," *Carnegie Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), and that, as a general rule, "when the federal claims are dismissed the 'state claims should be dismissed as well,'" *In re Merrill Lynch Ltd. P'ships Litig.,* 154 F.3d 56, 61 (2d Cir.1998) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). Although the exercise of supplemental jurisdiction is discretionary, the ordinary

case "will point toward declining jurisdiction over the remaining state-law claims." *In re Merrill Lynch,* 154 F.3d at 61 (quoting *Cohill,* 484 U.S. at 350 n. 7, 108 S.Ct. 614).

Here, though the Court has dismissed all of Plaintiff's federal claims, it finds that the "values of judicial economy, convenience, fairness, and comity," *Cohill,* 484 U.S. at 350, 108 S.Ct. 614, support the exercise of supplemental jurisdiction over Plaintiff's NYSHRL claims. Standards for liability under Title VII and the NYSHRL are coextensive, and analytically identical to each other. *See Rojas v. Roman Catholic Diocese of Rochester,* 660 F.3d 98, 107 n.10 (2d Cir. 2011); *Preuss v. Kolmar Labs., Inc.*, 970 F. Supp. 2d 171, 184 n.14 (S.D.N.Y. 2013). Deciding Plaintiff's state-law claims therefore does not require the investment of additional judicial resources. "Nor is there a substantial comity concern raised by this Court's application of state law with which courts in this District are eminently familiar, and which is applied by those courts every day." *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 413 (S.D.N.Y. 2014). The Court therefore finds that the *Cohill* factors weigh in favor of supplemental jurisdiction over Plaintiff's NYSHRL claims.

Turning now to the merits of Plaintiff's NYSHRL claims, the Court addresses each type of state law claim asserted by Plaintiff in turn.

   a.   Hostile Work Environment

Hostile work environment claims brought under Title VII and the NYSHRL are assessed using the same standard. *See, e.g.*, *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 261–62 (2d Cir. 2023); *Zheng-Smith v. Nassau Health Care Corp.*, No. 20-3544-CV, 2021 WL 4097316, at *3 (2d Cir. Sept. 9, 2021); *Littlejohn v. City of New York*, 795 F.3d 297, 320-21 (2d Cir. 2015). As was the case with Plaintiff's Title VII claim for a hostile work environment, Section I, *supra*, Defendants are entitled to summary judgment on Plaintiff's NYSHRL hostile work environment

claim based on the *Faragher*/*Ellerth* affirmative defense. *See Ferrara*, 2024 WL 485742, at *2 (granting summary judgment "in [defendant's] favor on the hostile work environment claims under the…NYSHRL based on the *Faragher*/*Ellerth* defense."); *see also Setelius v. Nat'l Grid Elec. Servs. LLC*, No. 11-CV-5528 MKB, 2014 WL 4773975, at *29 (E.D.N.Y. Sept. 24, 2014) (granting summary judgment as to plaintiff's hostile work environment claim under NYSHRL based on the *Faragher*/*Ellerth* defense)*; Audrey v. Career Inst. of Health & Tech.,* No. 06–CV–5612, 2010 WL 10094570, at *17 (E.D.N.Y. Jan. 12, 2010) (same), *report and recommendation adopted,* No. 06–CV–5612, 2014 WL 2048310 (E.D.N.Y. May 18, 2014). The Court accordingly dismisses Plaintiff's state law hostile work environment claim.

      b.   <u>*Quid Pro Quo* Sexual Harassment</u>

Plaintiff alleges that she "was ultimately wrongfully terminated for refusing DEFENDANT DONAT's sexual advances '*quid pro quo.*'" (Compl. ¶ 71.) *Quid pro quo* sexual harassment "refers to situations in which submission to or rejection of unwelcome sexual conduct by an individual is used as the basis for employment decisions affecting such individual." *Frederick v. Passfeed, Inc.,* No. 21-CV-2066 (RA), 2022 WL 992798, at *7 (S.D.N.Y. Mar. 31, 2022) (quoting *Perks v. Town of Huntington*, 251 F. Supp. 2d 1143, 1154 (E.D.N.Y. 2003)) (cleaned up). To establish a *prima facie* case of *quid pro quo* harassment, "a plaintiff must present evidence that she was subject to unwelcome sexual conduct, and that her reaction to that conduct was then used as the basis for decisions affecting the compensation, terms, conditions or privileges of her employment." *Id.* (quoting *Karibian v. Columbia University,* 14 F.3d 773, 777 (2d Cir.), *cert. denied,* 512 U.S. 1213, 114 S.Ct. 2693, 129 L.Ed.2d 824 (1994)). "To raise an inference of discrimination, a *quid pro quo* harassment claim must establish a 'causal connection' between the rejection of sexual advances and the employment

action." *Harriram v. Fera,* No. 21-CV-3696 (RA), 2024 WL 1020266, at *5 (S.D.N.Y. Mar. 8, 2024) (quoting *Cook v. N.Y.C. Dep't of Educ.*, 90 F. App'x 562, 563 (2d Cir. 2004)). A "close temporal proximity" between the two events can "constitute evidence of a causal connection." *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 90 (2d Cir. 2011).

Here, Plaintiff fails to establish a causal connection between her rejection of Defendant Donat's alleged sexual advances and his decision to alter her job duties and criticize her work more aggressively. There is no evidence in the record that Donat's purported advances were linked to him "holding out [job] benefits as an inducement to [Plainitff] for sexual favors." *Carrero v. New York City Hous. Auth.*, 890 F.2d 569, 579 (2d Cir. 1989). For example, Plaintiff does not allege that Donat used his professional authority over her to persuade her to accept his sexual advances, either by promising employment benefits if she complied or by threatening adverse action if she did not. Even *if* Donat's text messages were attempts to seek sexual favors from Plaintiff, Plaintiff has not put forth any evidence that Donat "conditioned his demands on any…benefits, either directly or indirectly." *See Hernandez v. Premium Merch. Funding One, LLC,* No. 19CV1727, 2020 WL 3962108, at *13 (S.D.N.Y. July 13, 2020) (dismissing claim of *quid pro quo* sexual harassment). Nor does she expressly allege that, after she rejected his advances, Donat brought about her termination by, for example, recommending that she be fired. In fact, Plaintiff does not even plead that Donat had the power to influence personnel decisions. But "the gravamen of a *quid pro quo* claim is that a tangible job benefit or privilege is conditioned on an employee's submission to sexual blackmail and that adverse consequences follow from the employee's refusal." *Id.* (quoting *Carrero*, 890 F.2d at 579); *see also Karibian*, 14 F.3d at 778 ("the relevant inquiry in a *quid pro quo* case is whether the supervisor has linked tangible job benefits to the acceptance or rejection of sexual advances"). "Without such

allegations, the Court has no basis for inferring that Plaintiff's termination was the result of a *quid pro quo* situation—if [Donat] did not have the ability to get Plaintiff fired, then her termination could not have resulted from her rejection of him." *See Maiurano v. Cantor Fitzgerald Sec.,* No. 19 CIV. 10042 (KPF), 2021 WL 76410, at *6 (S.D.N.Y. Jan. 8, 2021). Accordingly, the Court grants Defendants summary judgment on Plaintiff's NYSHRL *quid pro quo* sexual harassment claim.

      c.   <u>Retaliation</u>

Finally, Plaintiff alleges that Defendants retaliated against her for reporting the sexual harassment and sex-based discrimination she faced. (Compl. ¶¶ 69; 71.) As an initial matter, Plaintiff's NYSHRL retaliation claim against the City fails for the same reasons as her Title VII retaliation claim—namely, the retaliatory action of which Plaintiff complains (i.e. Defendant Donat's criticisms and alterations of her job duties) precedes her protected activity (the filing an internal complaint). *See* Section III, *supra.*

Unlike Plaintiff's Title VII claim for retaliation, however, her NYSHRL retaliation claim can additionally be asserted against Defendant Donat. *See Malena v. Victoria's Secret Direct, LLC,* 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012) (holding that individuals may be subject to liability under the NYSHRL "because it applies to 'any person,' not only employers"); *see also Rashid v. Beth Israel Med. Ctr.,* No. 96 CIV. 1833 (AGS), 1998 WL 689931, at *3 (S.D.N.Y. Oct. 2, 1998) (explaining that "no cause of action can lie against an individual under Title VII," but "[t]he state and city human rights laws do not have a similar restriction"). The elements of a *prima facie* case of retaliation under the NYSHRL are as follows: "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal

connection exists between the protected activity and the adverse action." *Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023) (quoting *Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019)). The Defendants argue that Plaintiff has not presented evidence sufficient to satisfy the first element—that Plaintiff engaged in protected activity. (Defs.' Reply at 5-6.) Plaintiff counters that "[t]he act of rebuffing sexual and inappropriate advances is, in itself, protected activity." (Pltf.'s Opp. at 13.) For the reasons set out below, the Court agrees with Defendants.

The Second Circuit has yet to rule on whether resisting an employer's sexual advances constitutes "protected activity" for purposes of establishing retaliation. *See Fitzgerald v. Henderson*, 251 F.3d 345, 366 (2d Cir. 2001). Other circuits are split on this issue, *compare LeMaire v. Louisiana Dep't of Transp. & Dev.*, 480 F.3d 383, 389 (5th Cir. 2007) (not a protected activity) *with Ogden v. Wax Works, Inc.*, 214 F.3d 999, 1007 (8th Cir. 2000) (holding that plaintiff "'engaged in the most basic form of protected activity' when she told her supervisor [ ] to stop his offensive conduct."), as are the district courts within this Circuit, *compare Nunez v. New York State Dep't of Corr. & Cmty. Supervision*, No. 14-CV-6647 JMF, 2015 WL 4605684, at *13 n.4 (S.D.N.Y. July 31, 2015), *aff'd sub nom. Nunez v. Lima,* 762 F. App'x 65 (2d Cir. 2019) (holding that rejecting a sexual advance is not a protected activity for purposes of a retaliation claim); *Reid v. Ingerman Smith LLP*, 876 F. Supp. 2d 176, 189 (E.D.N.Y. 2012) (same), *Del Castillo v. Pathmark Stores, Inc.*, 941 F. Supp. 437, 438-39 (S.D.N.Y. 1996) (same) *with Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 448 (S.D.N.Y. 2018) (holding that rejecting a sexual advance is a protected activity for purposes of a retaliation claim), *Laurin v. Pokoik*, No. 02 CIV. 1938 (LMM), 2005 WL 911429, at *4 (S.D.N.Y. Apr. 18, 2005) (same); *Johnson v. Medisys Health Network*, No. 10 Civ. 1596(ERK)(VP), 2011 WL 5222917, at *15 (E.D.N.Y. June 1, 2011) (same). This Court agrees with those courts that have

held that "simply…declining a harasser's sexual advances" does not constitute a protected activity for the purpose of a retaliation claim. *See Del Castillo,* 941 F.Supp. at 438–39. First, "[i]f it were otherwise, every harassment claim would automatically state a retaliation claim as well." *Id.* at 439. Second,

> one of the key purposes of the retaliation provisions in anti-discrimination statutes such as Title VII and the NYSHRL is 'preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the [statute's] basic guarantees.' But if one makes no effort to secure or advance the guarantees of an anti-discrimination statute by taking any action in response to allegedly discriminatory conduct, there can be nothing for the employer to interfere with.

*Reid,* 876 F.Supp.2d at 189 (quoting *Burlington Northern,* 548 U.S. at 61); *see also Williams v. New York City Dep't of Educ.,* No. 19 CIV. 1353 (CM), 2019 WL 4393546, at *12 (S.D.N.Y. Aug. 28, 2019) ("[r]etaliation is a term of art – it means being punished for opposing practices, by complaining, filing charges, or participating in investigations. Nothing in the text of the statute suggests that merely saying no to a sexual advance is 'engaging in a protected activity'"). Accordingly, as a matter of law, Plaintiff's resistance to Donat's purported sexual advances, without more, is not enough to state a claim for a retaliation.

Moreover, even assuming, *arguendo*, that declining a harasser's advances constitutes protected activity, Plaintiff has failed to "raise a genuine issue of fact as to whether she put [Donat] on notice that she felt she was facing or opposing discrimination *on the basis of her sex,* as proscribed by Title VII." *See Brantman v. Fortistar Cap., Inc.,* No. 15-CV-4774 (NSR), 2017 WL 3172864, at *7 (S.D.N.Y. July 22, 2017) (emphasis in original). Plaintiff admits that she only "ignored [Donat's] advances" (ECF No. 73-4 at 100:21) deposition and "did not respond" (*id.* 129:16) to him. In other words, she never verbally expressed to Donat that she felt uncomfortable, or any sentiment to the effect that she felt she was being discriminated against. But it is axiomatic that a defendant "must have 'knowledge' of the protected activity to be able

to 'engage in retaliation.'" *Little v. Nat'l Broad. Co.,* 210 F. Supp. 2d 330, 384 (S.D.N.Y. 2002) (quoting *Gordon v. Kings County Hosp. Ctr.,* 95–CV–3006, 2000 WL 1868091, at *6 (E.D.N.Y. Oct. 25, 2000)); *see also Jalal v. Columbia Univ.,* 4 F.Supp.2d 224, 242 (S.D.N.Y.1998) (holding that, if defendant was unaware of plaintiff's activity, defendant's actions "could not have been motivated by the fact that" plaintiff engaged in the activity). "[A]lthough an employee need not use the magic words 'sex' or 'gender discrimination' to bring her speech within Title VII's retaliation protections, [P]laintiff has to at least say something to indicate her gender is an issue." *Brantman*, 2017 WL 3172864, at *7 (quoting *Sitar v. Ind. Dep't of Transp.,* 344 F.3d 720, 727-28 (7th Cir. 2003)). And, as Plaintiff concedes, this "knowledge cannot be proven by inference" alone. (Pltf.'s Opp. at 14 (citing *Little,* 210 F. Supp. 2d at 384).) If Plaintiff never made clear through her words or actions that she was resisting or refusing Donat's purported advances, then Donat "could not have understood that she was opposing activity allegedly unlawful under [the NYSHRL], and engaging in protected activity." *Brantman*, 2017 WL 3172864, at *8. Accordingly, because Plaintiff has failed to put forth evidence that she engaged in a protected activity, Defendants are entitled to summary judgment on Plaintiff's NYSHRL retaliation claim. *See id.*

## CONCLUSION

Defendants' Motion for summary judgment is GRANTED and all of Plaintiff's claims are dismissed with prejudice. The Clerk of Court is kindly directed to terminate the motion at ECF No. 72, issue judgment in favor of Defendants, and close the case.

Dated: September 12, 2024
White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge